RECEIVED
APR 2 7 2006
NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF COLUMBIA

JACK CHARLES MASSENGALE

    Plaintiff                             CIVIL ACTION NO 05-2275 (RJL)

v.

UNITED STATES

    Defendant

PLAINTIFF'S REPLY TO
DEFENDANT'S COMBINED REPLY TO PLAINTIFF'S RESPONSE TO
DEFENDANT'S MOTION TO DISMISS AND
DEFENDANT'S COMBINED REPLY TO
PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON LIABILITY

1. Plaintiff reserves the right to undertake discovery to refute Defendant's Motion to Dismiss, in the event the Plaintiff's defense is not successful on current paperwork.

2.. The Defendant's Combined Reply, paragraph 1, states:

> "As Filamor's declaration makes clear, Filamor merely explained his understanding that the U.S. Capitol Police maintained the Truk-Trak [sic] at issue, and therefore the Capitol Police would be the appropriate agency to process any tort claim arising from the operation of the Truk-Trak [sic]. The undisputed record in this case also demonstrated that Filamor was correct because the Capitol Police eventually did acknowledge that it was the appropriate agency."

Eventually? Eventually!!! As the injured party I had to file an administrative claim within a certain time period, NOT EVENTUALLY. Mr. Filamor and his cohorts are <u>now</u> very thorough in telling me what to do with attached sworn affidavits now, after the deadline for filing an administrative claims, and after the government has been filed and served with a U.S. District Court complaint (<u>without ever even the courtesy of an formal written answer to my Federal Tort Claims Act (FTCA) administrative complaint which</u>

<u>Mr. Filamor swears was received at the House counsel office on February 25, 2005, affidavit of March 23, 2006, paragraph's 4, 5 and 6</u>). <u>Note the absence</u> in Mr. Filamor's affidavit, like Sir Conan Doyle's hound of the Baskerville's whose significance to Doctor Sherlock was that it did not bark, of any swearing to making any response to me whatever to my administrative claim. By contrast, Defendant's first exhibit, marked as "Exhibit 1" is a one-page letter of February 8, 2005, to me by Phyllis J. Pyles, Director of the Torts Branch, Civil Division, of the U.S. Department of Justice, to the Honorable Geraldine Jenner, General Counsel of the House of Representative, with a copy sent to me on tangible, undeniable, physical paper (not on a whisper-down-the-lane, deniable, effervescent, oral <u>understanding</u>), which states in its entirety:

> The U.S. Department of Justice received the above administrative tort claim postmarked December 23, 2004, on December 28, 2004. Because the claim arises out of the actions of the U.S. House of Representatives, in accordance with 28 C.F.R. Section 14.2(b)(1), I am forwarding it to your office for appropriate action. Claimant has been advised of the referral and requested to direct all further communication regarding the claim to your office.

Note that the Exhibit 1 letter, copied to me, of Ms. Pyles speaks with silence to me as to anything missing from my FTCA claim or extra needed to complete my FTCA claim. Note also that the March 23, 2006, affidavit of Mr. Filamor does not note anything missing or needed as to my FTCA claim he acknowledges was received, after forwarding from USDOJ, on February 25, 2005. Note that while my FTCA claim to the Department of Justice mailed on December 23, 2004, (Defendants' Exhibit 3) arrived five (5) days later on December 28, the February 8, 2005 letter of Mr. Pyles was not received by the House counsel office until February 25, (seventeen (17) days later for this intra-government mail), according to Mr. Filamor's affidavit, paragraphs 4 and 6. Note also

the affidavit of Cecilia Barrios, paralegal of the United States Capitol Police, whose affidavit at paragraph 4 acknowledges receiving my medical records and at paragraph 8 acknowledges receiving an unsigned copy of my FTCA claim form (which I had submitted to the U.S. Department of Justice, as instructed, on December 23, 2004.) Listen also to the booming sounds of listen in the lack of denial in the Defendant's affidavit's and exhibits as to House's ownership of said public sidewalk.  (Apparently, the some government's agents here may expect the principal of dust-to-dust ashes-to-ashes, that applies to all living things, to come to pass for me, and watch me blow away by action of the passage of time in a breeze.  However, I am currently wind-resistant). When I saw him before filing my administrative claim, Mr. Filamor gave me only his top-of-the-head informal oral <u>understanding</u>.  Understanding? That's all.  No written follow-up I could count on. A couple minutes. After the administrative claim filing – no bureaucratic time at all was spent, as far as appears, as I never heard anything.  Now, after the court filing and service, the government piles Ossa-upon-Pelion in bureaucratic person-hours.  It might have been more helpful to me, as a citizen, to have received this much more busy lawyerly attention earlier, together with these sworn affidavits earlier, together with court case citations and statutory law citations earlier and, further with serial numbers and property book record certified record of information that the Capitol Police owned the TrukTrak barriers that were obviously placed on the public sidewalk outside of the Cannon House Office Building.  It MIGHT have been more helpful earlier, before I filed my administrative claim.  But, I think that it <u>actually would not</u> have been more helpful, and still would have been a red-herring of misdirection ---- because I actually fell on the House of Representatives public sidewalk over the hazardous

TrukTrak which was placed on that public sidewalk, which duty the House had a duty to prevent. Thus, under the doctrine of premises liability or respondeat superior, the House of Representatives, which, at least so far, has not denied being responsible for and maintaining its public sidewalk, was responsible for the TrukTrak, because even if it was placed there by the Capitol Police, the House allowed it to remain, despite its ordinary duty to maintain a safe public sidewalk for use of pedestrians exiting from the East Capitol Metro (as I did) and other passerby. The TrukTrak's very name put the House on notice that it was intended for truck navigation, not pedestrian navigation. The House and the Capitol Police should seek contribution and indemnity from each other, as appropriate under ordinary principals of tort and contract law, or whatever bureaucratic variation of contribution and indemnity they may have with each other. If they don't have contribution and indemnity, that is not my fault and not my problem. The Federal Tort Claims Act (FTCA) says that the local, that is District of Columbia, rules of tort liability apply. I am just trying to be made whole like any tort claimant under the FTCA. See:

> Because this is a diversity case, the substantive tort law of the District of Columbia controls. See *Joy v. Bell Helicopter Textron, Inc.*, 999 F.2d 549, 553 (D.C. Cir. 1993). The standard of care owed by an owner or occupier of land is "reasonable care under all of the circumstances." *Sandoe v. Lefta Assocs.*, 559 A.2d 732, 738 (D.C. 1988). To recover against either an owner or occupier of land, the plaintiff must show "that the defendant had notice-either actual or constructive-of the present existence of an allegedly dangerous condition." *Croce v. Hall*, 657 A.2d 307, 311 (D.C. 1995).
> Smith v. Washington Sheraton Corporation, 135 F.3d 779, 782 (D.C. Cir 1998),(fall on hotel ramp; "Because there was evidence of Sheraton Operating Corporation's control of the premises, it should not have been removed from the case for lack of such evidence." Ibid).

The House controlled the public sidewalk I fell upon and where the TrukTrak was placed, therefore, the House is liable, and the proper agency to send the administrative claim

[unanswered though it be], to. District of Columbia tort law would also apply under the Federal Tort Claims Act. The Smith court, at 784-785, also said:

> B. The Conduct of Defense Counsel
> As we have described, defense counsel's motion for judgment on behalf of five of his clients included Washington Sheraton Corporation. [**13] Counsel explicitly acknowledged that there had been testimony concerning Sheraton Operating Corporation. He then stood silent as the court inadvertently granted judgment in favor of Sheraton Operating Corporation but kept Washington Sheraton Corporation in the case. Defense counsel no doubt viewed this development with glee. Every attorney likes to try a case with a net, to have a sure basis for reversal if the jury finds against his client. On the other hand, plaintiff's attorney also said nothing to correct the court's misstatement. Why he did not speak up is a mystery to us.
> At any rate, there is a good reason not to reward the defense for the confusion that [*785] ensued. Defense counsel represented to the district court that there was "a total vacuum as to who owns the Sheraton Operating Corporation, who owns the Sheraton Hotel, what partners are involved in it," see Trial Transcript at 1003. At oral argument in this court, defense counsel maintained that his Answer denied ownership and control n3 while it acknowledged the leasing arrangement of the hotel. n4 Clearly someone owned the hotel and the universe of all possible owners seems to have been the defendants. When we asked [**14] about this, defense counsel responded that he did not know who owned the hotel, that he never asked any of his Sheraton clients whether they did, that he never investigated the subject. In other words, on his interpretation of the pleading, he filed an answer denying his clients' ownership without knowing whether the denial had any evidentiary foundation. There is a rule against such practices. Federal Rule of Civil Procedure 11(b)(4) provides that in pleadings and other representations to the court, an attorney is certifying that "denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief." [footnotes omitted]

Here, "[w]hy [Mr. Filamor] did not speak up [as to answering my administrative claim he acknowledges was received is no] mystery"… as he and his fellow lawyers never answered it. Here, Mr. Filamor's <u>top-of-the head</u> <u>understanding</u> as to the TrukTrak on his employer's "House" client public sidewalk, never backed up with written communication to me, may mean nothing under Federal Rule of Civil Procedure 11, but

was not a hook to even hang a hat on when it came time to file my FTCA claim. As the Smith case, at 784, records, even a court can make an inadvertent "misstatement," and Mr. Filamor's strictly oral "understanding" sounded more like a hunch to me, and there was no written showing until "eventually" about the previously whispered ownership of the TrukTrak by the Capitol Police, while the ownership of said public sidewalk was obviously –so far undenied by affidavit or exhibit (notwithstanding the bald assertions in 2 of the government's April 24, 2006 filing)—by the House of Representatives. Here, "[c]learly someone owned the [public sidewalk] and the universe of all possible owners seems to have been the [United States House of Representatives]." I did not go outside the universe of owners – i.e, only the House-- of the public sidewalk I fell on when I filed the administrative claim against the House. Unlike the factual situation in Smith, at 786 and following, there was no hint of a warning sign in my show-down fall-down on the Cannon House Office Building public sidewalk. [Perhaps, someday soon, with the advent and perfection of computer automated minutiae, corporations and government bureaucracies will register every stick of furniture, every hammer and sickle and saw and TrukTrak, and alternative squares of their public sidewalks, under different corporate entities with microscopic ownership labels, not to avoid liability, mind you, but to make defense litigation more fun and "glee"-ful! Hopscotch play anyone? Step on a crack [or a Hubbell TrukTrak] break your mother's back, anyone? ]

3.      The Defendants's April 24, 2006, reply missive at paragraph 2, speaks entirely in the negative voice. None of the "documentation supporting defendant's motion to dismiss" alluded to in paragraph 2 ever deny that the House of Representatives is responsible for maintaining its public sidewalk outside the Cannon House Office

Building – nor does the April 24, 2006 paragraph 2 cite to anything in the government's earlier Motion to Dismiss.. The April 24, 2006 missive at paragraph 3 states my FTCA claim was late, but is significantly silent as to any denial as to its completeness – which is consistent with the silence as to any alleged lack of FTCA claim completeness by Ms. Pyle's Exhibit 1 letter of February 8, 2005 and Mr. Filamor's affidavit silence as to lack of completeness of March 23, 2006. [I am beginning to believe the government's Motion to Dismiss should more accurately be entitled a "Motrin to Dismiss."]

4.     It was my understanding that the filing of the administrative claim addressed to the U.S. House of Representatives by way of the U.S. Department of Justice was timely, in accordance with the instruction I received, and would not be contested. I was told not to physically bring the administrative claim paperwork to the U.S. House attorneys as I wanted to do because of lingering concerns about mail to the House due to the anthrax scare and the few deaths from it, and could have quite conveniently have done, but to mail it to the address I sent it to. That should entitle me to equitable tolling, under the authorities cited, ironically enough, in Defendants' Motion to Dismiss, at least, if the Court finds my FTCA claim was not otherwise timely filed.

5.     The Defendants' Joint Reply of April 24, 2006, at paragraph 5 notes that: "Massengale properly consents to the dismissal of the House of Representatives, id, at 5 Paragraph 11, as it is not a proper party to this suit." Sure, I do what's right under the law and the facts. I ask the government to do the same.

6.     It was, and is, not at all obvious how to cross a Hubbell TrukTrak placed on an uphill slope of a pebble finished public sidewalk (as it was outside the Cannon House Office Building) while pulling one of the popular wheeled carts with a large lawyer's

briefing case on it. Yes, it was obvious that the TrukTrak was on the Cannon HOB public sidewalk, and because it was obvious, the House had a duty to remove the hazardous-to-pedestrian-travel TrukTrak from the public sidewalk and find a safe alternative to route the electric-lawnmower-style power cable, or at very least have posted warning signs.

7.      I am attaching a specification sheet of the Hubbell TrukTrak, several of which were linked almost all the way across the public sidewalk outside the Cannon House Office Building on First Street Southeast down the hill a bit from Independence Avenue to cover one ordinary lawnmower style electrical cord. Note both that the Hubbell TrukTrak will bear a maximum load of 10,880 pounds, and that I have never weighed near 10,880 pounds in my eighty-four (84) years, and that I have yet to meet or hear of any person who weighs near 10,880 pounds. [Plaintiff's Exhibit 1] The attachment does not show it, but the Hubbell TrukTrak is clearly marked with the embedded letters "TrukTrak" on its topside.

8.      I am going into the hospital April 27, 2006, for a heart operation by Dr. Paul J. Corso, who has a good reputation, scheduled for Friday. I have put off scheduled personal meetings until July. I should be able to work on papers earlier. I will be receiving mail from home as soon as able, and plan return home to recuperate as soon as possible. If I have some delays as a result of the operation, please bear with me. Thank you.

9.      I apologize for not including a motion for summary judgment on liability with my response, as I was busy and somewhat distracted.

Accordingly, for the reasons herein in plaintiff's earlier response to Defendant's

Motion to Dismiss, the Court should not dismiss this case and DENY Defendant's Motion.

April __, 2006        Respectfully submitted,        *Jack C. Massengale*
                                                      Jack C. Massengale, Pro Se
                                                      7105 Steed Court
                                                      Hyattsville, MD 20782
                                                      301-779-2971
                                                      fedservice@yahoo.com

### Certificate of Service

I, Jack Massengale, mailed the attached Reply by prepaid US Mail this __ day of April 2006 to:

Kenneth Wainstein, Esq.
Rudolph Contreras, Esq. and
Alan Burch, Esq.
Assistant United States Attorneys
555 4th St NW
Washington, DC 20530
202-514-7204
Alan.burch@usdoj.gov

*Jack C. Massengale*
Jack C. Massengale